IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| AMCO INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:16-CV-00047-DGK |
| ) | |
| N.O., by and through her natural mother ) | |
| and general guardian ASHLEY O'NEILL, ) | |
| COREY FRISBEE, ) | |
| LEEANN HUTCHISON, ) | |
| GENIE INDUSTRIES, INC., ) | |
| TERRY FLETCHER, ) | |
| ) | |
| Defendants. ) | |

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This declaratory judgment action concerns insurance coverage for a wrongful death lawsuit currently pending in the Circuit Court of Clay County, Missouri ("Underlying Lawsuit").[1] The lawsuit stems from a workplace accident that caused the death of Colton Frisbee ("Decedent"). In that lawsuit, N.O., Decedent's daughter, Corey Frisbee, Decedent's father, and Leeann Hutchison, Decedent's mother (collectively "Underlying Claimants"), sued Terry Fletcher ("Fletcher") and Genie Industries, Inc. for negligence and in strict product liability. At the time of the accident Decedent and Fletcher worked for Myron's Precise Paint Systems, Inc. ("Myron's").

Plaintiff AMCO Insurance Company ("AMCO"), Myron's insurer, filed suit in this Court seeking a declaration that it has no duty to defend or indemnify Fletcher in the Underlying Lawsuit. AMCO names as defendants N.O., Frisbee, Hutchinson, Fletcher, and Genie Industries, Inc.

---

[1] *N.O. v. Genie Indus., Inc.*, No. 15CY-CV07590 (Mo. Filed Sept. 24, 2015).

Now before the Court is AMCO's motion for summary judgment (Doc. 41). AMCO moves for an order declaring it owes no duty to defend or indemnify Fletcher based on the provisions of four insurance policies it issued to Myron's. Defendants failed to respond to this motion. For the reasons set forth below, the Court holds AMCO owes no duty to defend or indemnify Fletcher in the Underlying Lawsuit. The motion is GRANTED.

## Summary Judgment Standard

A district court may grant a motion for summary judgment if all the information before the court demonstrates "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the court of the basis for its motion, and it must identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). If the movant does so, then the nonmovant must respond by submitting evidence demonstrating that there is a genuine issue for trial. *Id.* The court views any factual disputes in the light most favorable to the nonmoving party. *Id.* "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S 557, 585 (2009).

When the adverse party does not respond to a motion for summary judgment, the court may consider the facts as undisputed and grant summary judgment if the movant is entitled to it. Fed. R. Civ. P. 56(e). Thus, even if a motion for summary judgment stands unopposed, a court must still determine that the moving party is entitled to judgment as a matter of law. *Interstate Power Co. v. Kansas City Power & Light*, 992 F.2d 804, 807 (8th Cir. 1993).

## Applicable Law

Missouri law governs this diversity action. Under Missouri law, "the interpretation of an insurance contract is generally a question of law, particularly in reference to the question of coverage." *D.R. Sherry Constr., Ltd. v. Am. Family Mut. Ins. Co.*, 316 S.W.3d 899, 902 (Mo. 2010). And under Missouri rules of construction, the language in an insurance contract is given its plain meaning. *Shahan v. Shahan*, 988 S.W.2d 529, 535 (Mo. 1997).

## Undisputed Facts

For purposes of resolving this summary judgment motion, the Court finds the relevant undisputed facts to be as follows. The Court deems Defendants to have admitted these facts because they failed to respond to this motion.

**A.     The Underlying Lawsuit**

On March 12, 2015, Fletcher and Decedent, both employees of Myron's, were operating a scissor lift in the parking lot of a building they were painting as part of a work assignment. While Decedent was operating the scissor lift, it became unsteady. Decedent jumped from the lift's elevated platform and landed on a truck, and the lift fell on Decedent, killing him.

On September 24, 2015, Underlying Claimants sued Fletcher for negligence in the death of Decedent. Underlying Claimants allege that Fletcher acted negligently by either selecting the indoor scissor lift for outside use, or, in the alternative, by failing to keep a careful lookout to warn Decedent of obstructions on the driving surface. On January 22, 2016, AMCO filed this declaratory judgment action seeking a determination that it owed no duty to defend or indemnify Fletcher.[2] On August 31, 2016, the Court ordered Defendants to file suggestions in opposition to

---

[2] This is a diversity action. Underlying Claimants are all citizens of Missouri, Fletcher is a citizen of Missouri, Genie Industries Inc. is a citizen of Washington, and AMCO is a citizen of Iowa.

this summary judgment motion. Defendants failed to respond or otherwise defend against this action.

**B.     The Insurance Policies**

AMCO issued four insurance policies to Myron's that were in effect on the date of the accident. The four policies are: the Commercial General Liability Policy ("CGL Policy"); the Business Auto Policy ("Auto Policy"); the Standard Workers Compensation Employees Liability Policy ("ELI Policy"); and the Commercial Umbrella Liability Insurance Policy ("Excess Policy").

      **1.     Commercial General Liability Policy**

The CGL Policy provides in pertinent part: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' to which this insurance applies," and it defines "bodily injury" to include death. CGL Policy § I.A.1 (Doc. 42-2). However, the CGL Policy excludes coverage for acts resulting in "[b]odily injury. . . to a co-'employee'[3] while in the course of his or her employment." *Id.* at § I.A.2(e). It also excludes coverage for wrongful death claims.

      **2.     Business Auto Policy**

The Auto Policy names Myron's as the insured and it states it will pay for damages resulting from a covered "auto." Auto Policy § II.A (Doc 42-3). The policy defines "auto" as "a land motor vehicle . . . designed for travel on public roads." *Id.* at § V.B. It excludes coverage for acts resulting in bodily injury to a co-employee while in the course of employment.

      **3.     Standard Workers Compensation Employees Liability Policy**

The ELI Policy names only Myron's as the insured. The policy covers bodily injury arising out of the course of employment but only for the insured employer.

---

[3] The parties do not dispute that a co-employee is another employee of the same company.

### 4. Commercial Umbrella Liability Insurance Policy

The Excess Policy names Myron's as the insured. There are two types of coverage within this policy: Coverage A, "Excess Follow Form Liability Insurance" and Coverage B, "Umbrella Liability Insurance." For purposes of both coverages, underlying insurance includes only the CGL Policy, the Auto Policy and the ELI Policy. Coverage A only covers incidents that are covered by the underlying insurance policies. Coverage B excludes coverage for bodily injury to an employee arising out of employment.

## Discussion

AMCO argues it owes no duty to defend or indemnify Fletcher in the Underlying Lawsuit because Fletcher is not an insured under any of the insurance policies and the conduct causing the loss is not covered by any of the insurance policies. Specifically: (1) Fletcher is not an insured under the CGL Policy and the policy excludes coverage for bodily injury to a co-employee; (2) the Auto Policy does not cover Fletcher because an auto was not involved in the accident and the policy excludes coverage for bodily injury to a co-employee; (3) Fletcher is not an insured under the ELI Policy; (4) the Excess Policy does not cover Fletcher because none of the underlying policies provide coverage and the policy excludes bodily injury to a co-employee. The Court agrees.

**I.  The CGL Policy does not cover Fletcher because Fletcher is not an insured and the policy does not cover bodily injury to a co-employee.**

Fletcher is not an insured under the plain language of the CGL policy. The policy insures Myron's employees but not for "bodily injury," including death, of a co-employee while in the course of his employment. Because the accident occurred between co-employees during the course of their employment, Fletcher is not an insured under the CGL policy for the bodily injury caused to Decedent. *See, e.g.*, *Selimanovic v. Finney*, 337 S.W.3d 30 (Mo. Ct. App. 2011)

(holding substantially similar policy language excluded employees as insureds for bodily injury, including death, against a co-employee).

Further, the policy language expressly excludes wrongful death claims. This exclusion unambiguously states that employees are not insureds for claims brought by a co-employee's survivors. As a result, Fletcher is not an insured under the CGL policy for the wrongful death claims brought by Decedent's family.

**II.     The Auto Policy does not cover Fletcher because the scissor lift is not an "auto" and the policy excludes bodily injury to a co-employee.**

Coverage by the Auto Policy is limited to accidents involving a covered auto. The policy defines "auto" as a vehicle designed for travel on public roads and does not include machines that are designed for use principally off public roads. The accident involved the use of an indoor scissor lift on a parking lot. The scissor lift was not designed for use on the public roads. Therefore, the scissor lift was not an auto and there is no coverage under the Auto Policy.

The Auto Policy also excludes coverage for bodily injury to a co-employee arising out of the course of employment. Similar to the CGL Policy, this exclusion also bars wrongful death claims made by co-employee's survivors. As previously discussed, this accident was between co-employees during the course of their employment, therefore the exclusion applies.

**III.    Fletcher is not an insured under the ELI Policy.**

Fletcher is not an insured under the plain language of the ELI policy. The policy only lists Myron's as an insured. The plain and unambiguous language of the policy does not include Fletcher as an insured and therefore, Fletcher is not covered by the ELI Policy. *See, e.g.*, *Missouri Emp'r Mut. Ins. Co. v. Nichols*, 149 S.W.3d 617, 626 (Mo. Ct. App. 2004) (employer was the only insured under a substantially similar ELI policy for bodily injury resulting from a workplace accident between co-workers).

**IV.    Neither Coverage A nor Coverage B under the Excess Policy covers Fletcher.**

Coverage A of the Excess Policy provides coverage only when an underlying insurance policy provides coverage. In this case, the underlying insurance policies are the CGL Policy, the Auto Policy, and the ELI Policy. Because none of the listed policies cover Fletcher, Coverage A of the Excess Policy does not cover Fletcher either.

Coverage B of the Excess Policy excludes bodily injury to a co-employee in the course of his employment. This is almost identical to the exclusion in the CGL Policy, which does not cover Fletcher. As such, Fletcher is not covered under Coverage B of the Excess Policy.

**V.    AMCO has no duty to defend Fletcher.**

An insurer's duty to defend is separate from its duty to indemnify and separate standards govern each duty. "The duty to defend is broader than the duty to indemnify." *McCormack Baron Mgmt. Servs., Inc. v. Am. Guar. Liab. Ins. Co.*, 989 S.W.2d 168, 170 (Mo. 1999). An insurance company has a duty to defend if there is "potential" for coverage under the policy. *Id.* The presence of any potentially insured claims in a complaint gives rise to a duty to defend, even though the claims may not survive a motion to dismiss. *Fleishour v. Stewart Title Guar. Co.*, 743 F. Supp. 2d 1060, 1066 (E.D. Mo. 2010). By contrast, an insurer's duty to indemnify—that is, to pay a judgment or settlement—"is determined by the facts as they are established at trial or . . . some other means, for example through summary judgment or settlement." *McCormack Baron*, 989 S.W.2d at 173.

In the present case, because the preceding analysis demonstrates Fletcher has no potential insurable claims against AMCO in the Underlying Lawsuit, AMCO has no duty to defend Fletcher in the Underlying Lawsuit.

## Conclusion

In sum, the insurance policies issued by AMCO to Myron's do not cover Fletcher for the conduct alleged in the Underlying Lawsuit. Consequently, AMCO has no duty to defend or indemnify Fletcher in the Underlying Lawsuit.

For the foregoing reasons, AMCO's motion for summary judgment (Doc. 41) is GRANTED.

**IT IS SO ORDERED.**

Date:   November 9, 2016             /s/ Greg Kays
                                                GREG KAYS, CHIEF JUDGE
                                                UNITED STATES DISTRICT COURT